## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LISA McINNIS, Administratrix of the Estate of MALCOLM A. McINNIS, deceased, and widow in her own right, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:22-cv-01087-MN-SRF |
| HEXCEL CORPORATION, *et al.*, | ) ) ) | |
| Defendants. | ) | |

### <u>REPORT AND RECOMMENDATION</u>

Before the court in this asbestos-related wrongful death action are two motions brought by Defendants Hexcel Corporation (hereinafter "Hexcel") and Sikorsky Aircraft Corporation (hereinafter "Sikorsky"). First is Hexcel's combined motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and *Daubert* motion to exclude expert testimony (D.I. 128),[1] and second is Sikorsky's motion for summary judgment (D.I. 130).[2] Sikorsky joins in Hexcel's *Daubert* motion. (D.I. 133) For the reasons that follow, the court recommends that Hexcel's motion for summary judgment be **GRANTED**, Sikorsky's motion for summary judgment be **GRANTED-IN-PART** for Plaintiff's conspiracy claim only and **DENIED** in all other respects, and Defendants' *Daubert* motion be **GRANTED-IN-PART** as to Dr. Tkacik and otherwise **DENIED**.

---

[1] The briefing for this motion can be found at D.I. 129, D.I. 150, and D.I. 152.
[2] The briefing for this motion can be found at D.I. 131, D.I. 149, and D.I. 153.

## I.     BACKGROUND

### A.  Procedural History

Plaintiff brought this suit against numerous defendants in the Pennsylvania Court of Common Pleas of Philadelphia County on June 21, 2022.  (D.I. 1 at 5, 29)[3]  It was removed to the Eastern District of Pennsylvania on July 18, 2022.  (*Id.* at 5–15)[4]  On August 16, 2022, the claims against three defendants, Raytheon Technologies Corporation (hereinafter "Raytheon"), Hexcel, and Sikorsky, were transferred to the District of Delaware because Pennsylvania lacked personal jurisdiction over them.  (D.I. 56)  On August 24, 2022, this case was referred to the undersigned Magistrate Judge.

On September 7, 2022, Raytheon moved to dismiss for lack of personal jurisdiction.  (D.I. 67)  This motion was unopposed, so the court recommended Raytheon's dismissal on September 28, 2022.  The recommendation was adopted by the District Judge on October 13, 2022.  (D.I. 78)

Defendants filed the motions before the court on October 27, 2023.  (D.I. 128; D.I. 130)  Plaintiff opposes the motions.  (D.I. 149; D.I. 150)  They were fully briefed on December 21, 2023, and are ripe for review.  (D.I. 152; D.I. 153)

### B.  Facts

This action arises from the death of Plaintiff Lisa McInnis' husband, Malcolm A. McInnis (hereinafter "Decedent") from alleged asbestos exposure.  (*See* D.I. 105)  Plaintiff is a citizen of Delaware.  (*Id.* at ¶ 1)  Both Hexcel and Sikorsky are Delaware corporations that

---

[3] *McInnis v. ADC Contracting & Supply*, Case No. 2206-1853 (Phila. Ct. Com. Pl. filed June 21, 2022).

[4] *McInnis v. ADC Contracting & Supply*, CA No. 5:22-cv-02779-ER (E.D. Pa. filed July 18, 2022).  This case was closed on July 16, 2024, before summary judgment motions were resolved.  (*See* D.I. 361)

maintain their principal places of business outside of Delaware. (*Id.* at ¶ 7)  The court has

jurisdiction over this action pursuant to 28 U.S.C. §§ 1333 and 1442(a)(1). (*Id.* at ¶ 82; *see also*

D.I. 1 at ¶ 7)

The Corrected Third Amended Complaint avers that Decedent served as a naval

helicopter mechanic onboard the USS Midway, Enterprise, New Orleans, and Ranger between

January of 1972 and February of 1981. (D.I. 105 at ¶¶ 6(d)–(e))  Decedent repaired Sikorsky

SH-3 helicopters in the open ocean and on naval bases in San Diego, California and Quonset,

Rhode Island. (*Id.*)  The SH-3s allegedly contained component parts made with asbestos, such as

cloths, clamps, and gaskets, that Decedent would routinely handle and replace. (*Id.* at ¶ 9)

Decedent was diagnosed with lung cancer on October 29, 2021, and died on January 5,

2022. (*Id.* at ¶¶ 1, 26)  Plaintiff contends that Decedent's illness and death was substantially

caused by Decedent's exposure to asbestos while working on Sikorsky SH-3 helicopters during

his service in the Navy. (*See, e.g.*, *id.* at ¶ 27)

On February 21, 2023, Plaintiff filed the operative Corrected Third Amended Complaint,

which asserts five counts:  Count I - Negligence; Count II - Strict Liability; and Count III -

Conspiracy. (D.I. 105)  Counts IV and V are more aptly choice of law provisions identifying

that the causes of action are subject to maritime law for ship-based claims and California law for

land-based claims,  respectively. (*Id.* at ¶¶ 82–86)

On March 29, 2023, the parties stipulated that only the following helicopter parts are at

issue in this case:  the battery compartment; battery cable jacket; generator gasket; engine oil

sensing unit and gasket; clamps associated with fire detection cable on firewall; clamps

associated with transmission wiring; slip rings associated with blade fold system; cable on

3

transmission "Christmas tree"; capacitors; transformer rectifier; cannon plug connectors; and engine bleed air valve. (D.I. 113)

### C. Testimony of Product Identification Witnesses

Decedent was not deposed in this case prior to his death on January 5, 2022. Therefore, Plaintiff relies largely on the product identification witnesses to support the claim that Decedent was exposed to asbestos during his time in the Navy. Plaintiff identified three of his fellow naval servicemen as product identification witnesses for deposition: Charles Wyatt, Richard Sprankle, and Frank Edwards. In addition, Plaintiff relies upon testimony provided by Sikorsky employees Karl Ulsamer and Vincent Recine.

### 1. Charles Wyatt

Wyatt and Decedent worked together on SH-3 helicopters over a two-year period while assigned to the USS Enterprise. (D.I. 131-2 Ex. 5 at 170:9–15) Wyatt testified that he and Decedent were exposed to a large number of asbestos products associated with the helicopters. Wyatt often ordered the parts used for the aircrafts' maintenance and recalls seeing references to "asbestos" in the parts manuals for some products. (*E.g.*, D.I. 149-4 Ex. P-1 at 51:21–52:15)

The batteries in the helicopters required general maintenance. (*See id.* at 41:7–11) They were in a compartment insulated with cloth that created dust when they were handled or deteriorated. (*See id.* at 44:19–46:17) Wyatt and Decedent were present when the metalsmiths handled the cloth. (*Id.* at 43:22–46:17)

The clamps used in the electrical system in the engine deteriorated in the heat and created dust. (*Id.* at 49:4–50:20) Wyatt claims that Decedent breathed the dust because he was in the vicinity of the clamps "all the time." (*Id.* at 49:2–50:20) Wyatt believed the clamps contained asbestos because a parts manual indicated that they contained asbestos. (*Id.* at 51:21–52:15)

According to Wyatt, a gimbal is a ring which spins and helps to maintain altitude in the helicopter. (*Id.* at 57:15–21) He and Decedent would remove and replace the gimbals, which broke and deteriorated often. (*Id.* at 59:7–24) The rings were called slip rings or the "Christmas tree" and were part of the blade fold system. (*Id.* at 61:17–62:24) Each slip ring had an electrical attachment. (*Id.*)

Repairing cracks in the helicopter blades required sanding and re-application of a coating. Wyatt and Decedent were present during this process. (*E.g.*, *id.* at 63:8–65:2) Wyatt referred to the coating as an epoxy. (*Id.* at 107:1–5)

Wyatt testified that he and Decedent removed or handled resistors and capacitors in electronic relay panels, but Wyatt did not know their composition. (*Id.* at 66:15–69:9) They also worked on pressure switches used in the engine and transmission. (*Id.* at 70:4–13)

Wyatt testified that he and Decedent handled gaskets and packing, which contained asbestos according to the parts manual. (*Id.* at 86:2–8)

Wyatt further testified that he and Decedent removed and replaced connectors, which had to be pulled from a firewall and involved contact with insulation. (*Id.* at 78:14–79:1, 81:1–7) Wyatt testified that the insulation associated with the connectors contained asbestos because the area required asbestos jacketing for heat resistance. (*Id.* at 84:7–85:10)

Wyatt identified honeycomb products that were used for the helicopter blades. (*Id.* at 98:20–99:4) He and Decedent were in the vicinity of others working with honeycomb products. (*Id.* at 63:7–65:2)

Wyatt further testified that Sikorsky representatives were present on the ship, but neither he nor Decedent had discussions with them about safety issues. (*Id.* at 111:15–112:12)

### 2. Richard Sprankle

Sprankle testified that he and Decedent would have worked on the aircraft separately. (*See, e.g.*, D.I. 149-4 Ex. P-2 at 37:10–13) Thus, his testimony about the kind of work Decedent might have performed is based on his knowledge of the similarity of their jobs and the job requirements for maintaining the electrical systems on the SH-3 helicopters, not on personal observations of Decedent's work. (*See, e.g., id.* at 49:20–24)

The job required replacement of batteries and removal of the insulated battery cables that were attached. Yet, Sprankle had no knowledge of the materials used to insulate the battery cables. (*Id.* at 34:7–17) Sprankle testified that clamps and gaskets would deteriorate. The clamps would create dust. (*Id.* at 39:15–41:15, 46:10–51:4) The worn gaskets needed to be scraped prior to replacement and created dust in the process. (*Id.* at 39:15–41:15, 46:10–51:4) Sprankle offered no testimony about the composition of the dust from the gaskets and never saw Decedent handle a gasket. (*Id.* at 48:24–49:23) The job also required replacement of coverings called "sleeves" that covered wire bundles. (*See id.* at 64:13–65:15) But Sprankle had no knowledge of the composition of the cloth sleeves used in high temperature conditions. (*See id.* at 64:13–65:15)

### 3. Frank Edwards

Edwards worked in the same shop as Decedent. (D.I. 149-4 Ex. P-3 at 18:13–16) He saw Decedent work on the SH-3 engines. (*Id.* at 35:21–37:16) He saw Decedent remove and replace new connectors. (*Id.* at 36:19–38:9) Decedent worked on insulated clamps and cables. (*E.g., id.* at 39:9–41:12) He worked on the aircraft's rotor blades. (*Id.* at 49:17–21) Decedent removed and installed harnesses frequently. (*Id.* at 57:7–58:12) But Edwards did not know the composition of any of the components handled by Decedent. (D.I. 131-2 Ex. 4 at 144:20–145:1)

### 4. Karl Ulsamer

Karl Ulsamer is a Senior Materials and Process Engineer at Sikorsky whose deposition was taken in an unrelated workers' compensation proceeding in Connecticut in 2012, *Bagley v. Adel Wiggins Group.*, cv-12-6024725-S (Conn. Super. Ct. filed Jan. 20, 2012) (hereinafter "*Bagley*"). (*E.g.*, D.I. 149-4 Ex. P-8)  Ulsamer testified that Sikorsky utilized asbestos-containing parts in some of its helicopters during the time period beginning in 1979, including gaskets, adhesives, cloths, and honeycomb. (*Id.* at ¶ 5)  His testimony did not specifically mention the SH-3 helicopter. (*See id.* at ¶¶ 5–6)

Ulsamer's testimony was also taken in the instant case. (D.I. 149-4 Ex. P-9)  He explained that one of his job duties involved finding replacement helicopter parts that do not contain asbestos. (*Id.* at 63:8–24)  He testified that certain products utilized on Sikorsky helicopters contained asbestos, including Garlock gaskets, clamps, and brake linings. (*Id.* at 92:21–96:9)  However, Ulsamer testified that he was unsure if the products he identified were ever utilized in an SH-3 or whether the Hexcel products he identified, Blue Seal honeycomb and Hexgard 540 honeycomb, were used on any aircraft. (*Id.* at 130:1–15, 188:14–20, 208:21–209:2)

### 5. Vincent Recine

Recine was deposed as a corporate representative of Sikorsky on March 9, 2023. (D.I. 149-4 Ex. P-10)  Recine testified that it was standard to have clamps, gaskets, sleeves, seals, and adhesives onboard Sikorsky helicopters. (*Id.* at 83:18–84:16)  He was shown a copy of a naval document titled "Replacement of Asbestos Aboard Navy Aircraft" that identifies various asbestos-containing parts used on Sikorsky "H-3" helicopters. (*Id.* at 71:7–75:23; *see also* D.I.

149 at 10; D.I. 149-4 Ex. P-11)  Recine stated that the only part he recalled was the battery cable. (D.I. 149-4 Ex. P-10 at 75:8–23)

## II.   LEGAL STANDARDS

### A. Summary Judgment

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).  Pursuant to Rule 56(c)(l), a party asserting that a fact is genuinely disputed must support its contention either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(l)(A) & (B).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact.  *See Celotex*, 477 U.S. at 321.  The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989).  When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all

reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). However, the existence of some evidence in support of the nonmoving party may not be sufficient to deny a motion for summary judgment. Rather, there must be enough evidence to enable a jury reasonably to find for the nonmoving party on the issue. *See Anderson*, 477 U.S. at 249. If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

### B. Substantial Factor Causation Under Maritime and California Law

The parties agree that Plaintiff's claims are governed by maritime law when Decedent performed work on naval vessels and California law when Decedent performed work on naval bases. (*E.g.*, D.I. 129 at 6 n.1; D.I. 150 at 7–8) To establish causation for asbestos related injuries under maritime law, "a plaintiff [must] show, for each defendant, that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 492 (6th Cir. 2005) (applying maritime law); *see also Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016).

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or [d]ecedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time." *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 376 (6th Cir. 2001)). On the other hand, "[m]inimal exposure to a defendant's product is insufficient [to establish causation]. Likewise, a . . . showing that defendant's product

9

was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quotation marks and citations omitted). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *id.*). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict products liability." *Stark*, 21 F. App'x at 376.

Under California law, "the plaintiff must first establish some threshold exposure to the defendant's defective asbestos-containing products, and must further establish in reasonable medical probability that a particular exposure or series of exposures was a 'legal cause' of his injury, i.e., a substantial factor in bringing about the injury." *Rutherford v. Owens-Ill., Inc.*, 941 P.2d 1203, 1223 (Cal. 1997) (emphasis and footnotes omitted).

In *Air & Liquid Systems Corp. v. DeVries*, 586 U.S. 446 (2019), the Supreme Court rejected "the more defendant-friendly bare-metal defense," which provided that "[i]f a manufacturer did not itself make, sell, or distribute the part or incorporate the part into the product, the manufacturer is not liable for harm caused by the integrated product." *Id.* at 453. The Supreme Court held that a product manufacturer has a duty to warn in the context of maritime tort law "when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger." *E.g.*, *id.* at 457.

Under *DeVries*, manufacturers have a duty to warn "only when their product *requires* a part in order for the integrated product to function as intended." 586 U.S. at 456 (emphasis in original). The Supreme Court noted specific circumstances in which the requirement rule would

10

apply, namely "when:  (i) a manufacturer directs that the part be incorporated; (ii) a manufacturer

itself makes the product with a part that the manufacturer knows will require replacement with a

similar part; or (iii) a product would be useless without the part." *Id.* at 457 (internal citations

omitted).  The Court limited the applicability of these circumstances, however, to situations

where "the manufacturer knows or has reason to know that the integrated product is likely to be

dangerous for its intended uses, and the manufacturer has no reason to believe that the product's

users will realize that danger." *Id.*  The "required test" announced in *DeVries* is disjunctive.  *See*

*id.*  Accordingly, any one of the circumstances listed will satisfy the test.  *In re Asbestos Prods.*

*Liab. Litig.*, 547 F. Supp. 3d 491, 494 (E.D. Pa. 2021).

### C. The Government Contractor Defense

Under the test set out in *Boyle v. United Technologies Corp.*, a federal contractor will not

be held liable for its product's design defects when:  (1) the United States approved reasonably

precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier

warned the United States about the dangers in the use of the equipment that were known to the

supplier but not to the United States.  487 U.S. 500, 512 (1988).  The defense is applicable to

both design defect and failure to warn claims.  *E.g.*, *MacQueen v. Union Carbide Corp.*, 2013

WL 6571808, at *3 (D. Del. Dec. 13, 2013), *report and recommendation adopted*, 2014 WL

108535 (D. Del. Jan. 9, 2014); *Walkup v. Air & Liquid Sys. Corp.*, 2013 WL 5448623, at *2 (D.

Del. Sept. 26, 2013), *report and recommendation adopted*, 2013 WL 5798701 (D. Del. Oct. 24,

2013); *In re Asbestos Litig. (Seitz)*, 661 F. Supp. 2d 451, 454 (D. Del. 2009).  In a failure to warn

claim, the first prong of *Boyle* is altered to preclude liability where the government exercised

discretion and approved the warnings.  *See Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th

11

Cir. 1995). Courts require the government approval to "transcend rubber stamping" for the defense to shield a government contractor from liability for failure to warn. *Id.* at 1156–57.

### D. Derivative Sovereign Immunity

"'[G]overnment contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States.'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016) (quoting *Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 583 (1943)); *see also Yearsley v. W.A. Ross. Constr. Co.*, 309 U.S. 18 (1940). But unlike traditional sovereign immunity, this immunity "is not absolute." *Campbell-Ewald*, 577 U.S. at 166. Establishing derivative sovereign immunity requires the following two step analysis: "(1) whether the federal government validly conferred authority on the federal contractor and (2) whether the contractor was performing as directed or otherwise exceeded their authority." *Rhoads Indus., Inc. v. Shoreline Found., Inc.*, 2022 WL 742486, *14 (E.D. Pa. Mar. 10, 2022) (citing *id.*).

## III.   DISCUSSION

### A. Procedural Defects Warrant Denial of Summary Judgment

The parties have failed to comply with the requirements for briefing dispositive motions incorporated into the Scheduling Order (D.I. 77) by the District Court's Local Rules and Federal Rule of Civil Procedure 56. The procedural defects alone warrant denying the Defendants' respective motions for summary judgment.

#### 1. Defendants Separately Filed Evidentiary Objections to Plaintiff's Answering Brief

Defendants assert evidentiary objections to deposition testimony and documents upon which Plaintiff relies in her answering briefs. (D.I. 154; D.I. 155) They raise objections to the admissibility of the evidence at trial based on hearsay, relevance, and prejudice, among other

grounds. Defendants cite no authority permitting a party to separately file evidentiary objections

at the summary judgment stage, outside of the briefing requirements permitted by Local Rule

7.1.3(a)(4) and incorporated into the Scheduling Order. (*See* D.I. 77 at ¶ 10a)  No such authority

exists because Defendants' challenges to Plaintiff's answering brief should be included within

Defendants' reply briefs.  Therefore, Defendants' separately filed objections will not be

considered and are overruled.

### 2.  Sikorsky's Failure to Comply with the Concise Statement of Facts Requirement

The Scheduling Order entered in this case includes a Concise Statement of Facts

("CSOF") Requirement which provides as follows:

> Any motion for summary judgment shall be accompanied by a separate concise
> statement, not to exceed six (6) pages, which details each material fact which the
> moving party contends is essential for the Court's resolution of the summary
> judgment motion (not the entire case) and as to which the moving party contends
> there is no genuine issue to be tried.  Each fact shall be set forth in a separate
> numbered paragraph and shall be supported with specific citation(s) to the record.

(D.I. 77 at ¶ 9(b))

Sikorsky's CSOF fails to comply with the directions and intent of the requirement and is

anything but concise.  (*See* D.I. 131-1)  Most of the numbered statements in the CSOF cite to

multiple paragraphs of several declarations, which in turn cite to hundreds of pages of multiple

exhibits attached to the declaration in their entirety.  No effort whatsoever has been made to

direct the court to particular sections or pages of each exhibit which Sikorsky relies upon to

support its contention as framed in the CSOF.

It is not facially plausible that every fact in the hundreds of pages of exhibits cited in the

declaration is relevant, material, and undisputed.  Moreover, in the text of its opening and reply

briefs, Sikorsky cites to its CSOF instead of the record itself.  (*See* D.I. 131; D.I. 153)  This

requires the court to shift to the contention in the CSOF, then shift to the declaration paragraphs

identified, then review hundreds of pages of the exhibits incorporated by reference in the declaration without any direction as to what the court should focus upon in the voluminous record of over 1,300 pages.

The following example highlights the difficulty of wading through Sikorsky's briefs: In the opening brief, Sikorsky argues "the Government exerted detailed control over the design and manufacture of the SH-3 military aircraft, including the selection and supply of entire aircraft components and equipment systems." (D.I. 131 at 15)  Sikorsky then directs the court to its CSOF Nos. 20–33.  (*Id.*)  By way of further example,  CSOF 21 states as follows:

> The military always has exercised a high degree of control, direction and involvement in the design, manufacture, testing, and production of all military aircraft, including all SH-3 aircraft.

(D.I. 131-1 at ¶ 21)  CSOF 21 then cites to the record as follows:

> (Recine Decl. ¶¶ 6–24; Riordan Decl. ¶¶ 10–13, 20–23.)

(*Id.*)  The cited paragraphs of the Recine Declaration alone incorporate the entirety of all of the Exhibits attached to the Declaration, Exhibits A through J, totaling 620 pages.  The court is therefore left to wade through 620 pages to find on its own the support for CSOF 21, then backtrack to where it is mentioned in the brief to determine if the record supports the singular argument.  This process must be repeated for every singular contention because Sikorsky cites only to its CSOF.

The court cannot reasonably be expected to engage in this onerous process to assess the merits of Sikorsky's arguments on summary judgment.  "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

Given this procedural background, the court makes its recommendations as detailed in the following sections.

14

**B. Hexcel's Product Identification and Causation**

Hexcel argues that its motion for summary judgment should be granted because Plaintiff has not presented evidence that Decedent worked in the vicinity of Hexcel-manufactured adhesives or honeycomb core during his time in the Navy. (D.I. 129 at 1–2) Furthermore, any Hexcel honeycomb to which Plaintiff was allegedly exposed did not contain asbestos. (*E.g.*, *id.*) Plaintiff alleges that Decedent was exposed to Hexcel Blue Seal honeycomb and Hexgard 540 honeycomb. (*See* D.I. 150 at 5)

Plaintiff has failed to demonstrate that alleged asbestos from honeycomb core manufactured by Hexcel was a substantial factor in causing Decedent's illnesses.

Plaintiff directs the court to the testimony of Charles Wyatt to argue that a genuine dispute of material fact exists as to causation. (D.I. 150 at 2–4; *see also* D.I. 150-4 Ex. P-1) Wyatt testified that structural mechanics worked in Decedent's vicinity as they sanded down the epoxy coating on helicopter blades. (*E.g.*, D.I. 150-4 Ex. P-1 at 98:9–99:4, 342:10–343:14, 345:15–349:22) Plaintiff avers that the adhesives on the blades and the honeycomb structure contained asbestos. (*See, e.g.*, D.I. 105 at ¶ 22) But Wyatt could not identify which company produced the coating for the helicopter blades or honeycomb to which Decedent was exposed. (D.I. 150-4 Ex. P-1 at 419:2–22) Although Wyatt also ordered thousands of Hexcel products, he testified that he ordered "relays" and "pressure switches," not honeycomb or adhesives. (*Id.* at 99:10–100:16, 419:23–420:23)

Next, Plaintiff highlights the sworn declaration of Karl Ulsamer, whose deposition was taken in *Bagley*, a Connecticut state workers' compensation proceeding. (D.I 150 at 5–6) Ulsamer testified that Hexcel produced two asbestos-containing honeycombs and/or adhesives that were used in Sikorsky helicopters from 1979 onward: Blue Seal honeycomb and Hexgard

15

540 honeycomb. (D.I. 150-4 Ex. P-6 at ¶ 6)  But Ulsamer did not testify that Hexcel products were used in SH-3s or used during the time period in which Decedent's exposure occurred. (*See* D.I. 150-4 Ex. P-6)  During his deposition taken for the case at bar, Ulsamer stated that he did not know if the products were used on any aircraft. (*See* D.I. 150-4 Ex. P-7 at 187:21–188:21)  Plaintiff's assertion that the products identified by Ulsamer are the same products identified by Wyatt is conjectural and not supported by any citation to record evidence. (*See* D.I. 150 at 9)

Plaintiff further argues that even though Ulsamer testified that Blue Seal honeycomb and Hexgard 540 honeycomb were used on Sikorsky helicopters from 1979 onward, it provides circumstantial evidence that older helicopters, including the SH-3, utilized asbestos-containing products. (D.I. 150 at 9–10)  However, Ulsamer's testimony does not support an inference that the Sikorsky SH-3s that Decedent repaired utilized Hexcel's products or that Hexcel products were used prevalently in older helicopter models. (*See* D.I. 150-4 Ex. P-6 at ¶ 6)  Furthermore, Plaintiff's citations to *Walker v. Viad Corp.*, 2019 WL 653216 (E.D. Pa. Feb. 14, 2019), and its companion case, *Walker v. Blackmer Pump Co.*, 367 F. Supp. 3d 360 (E.D. Pa. 2019), are distinguishable.  There, the plaintiff argued that a machine summary applicable to a different naval ship than the one on which he served created a genuine dispute of material fact whether he was exposed to asbestos. *E.g.*, *id.* at 366.  The court agreed because the machine summary stated that all ships in the particular class utilized asbestos-containing products. *E.g.*, *id.*  Here, there is no evidence in the record supporting a reasonable inference that the SH-3 utilized asbestos-containing Hexcel products. (*See* D.I. 150 at 9–10)

Accordingly, the court recommends that Hexcel's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be **GRANTED**.

## C. Sikorsky's Product Identification and Causation

Sikorsky argues that Plaintiff has not proffered admissible evidence that would establish that Decedent was exposed to asbestos-containing component parts while working on Sikorsky SH-3 helicopters. (D.I. 131 at 6–8)

The court recommends that a genuine dispute of material fact exists as to whether asbestos-containing materials utilized on Sikorsky's SH-3 helicopters was a substantial factor in causing Decedent's injuries. Plaintiff relies upon the deposition testimony of product identification witness Charles Wyatt. Wyatt ordered thousands of clamps, and he knew that they contained asbestos because it was stated in the parts manual. (D.I. 149-4 Ex. P-1 at 51:21–52:15) Wyatt testified that the gaskets he ordered contained asbestos, and he knew this because it was stated in the parts manual. (*Id.* at 86:2–13) Wyatt believed that the insulated jacket on the exterior of the cables contained asbestos because "all heated areas pretty much had some kind of asbestos jacketing for heat resistance." (*Id.* at 85:8–10) Wyatt testified that he ordered asbestos products "because that's what you knew were the correct heat elements." (*Id.* at 85:14–25)

Wyatt's testimony also creates a genuine dispute of material fact regarding whether Decedent's exposure to asbestos while working on SH-3 helicopters in the Navy was a substantial cause of his injuries. Wyatt testified that he and Decedent would replace gaskets in the SH-3 helicopters on "a daily or a weekly" basis. (*Id.* at 73:20–74:3) Wyatt and Decedent also removed and replaced insulated connectors that were attached to the helicopter's firewall on a nearly daily basis. (*Id.* at 78:18–79:1) Wyatt testified that he and Decedent were exposed to clamps that would "constantly deteriorate" and turn to dust, which they inhaled. (*Id.* at 49:2–21, 50:1–20) Moreover, Wyatt and Decedent worked together for roughly two years. (D.I. 131-2 Ex. 5 at 170:9–15)

17

Sikorsky argues that Wyatt's testimony is hearsay without exception because he learned

that the parts in issue contained asbestos through parts manuals that have not been produced in

discovery, and, thus, they should not be considered by the court in deciding this motion.  (D.I.

131 at 7–8)  But "[h]earsay statements can be 'considered on a summary judgment motion if they

are capable of admission at trial.'"  *St. Louis v. Morris*, 573 F. Supp. 2d 846, 853 (D. Del. 2008)

(quoting  *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 223 n.2 (3d Cir. 2000)).

Deposition testimony is properly considered on a motion for summary judgment.  Fed. R. Civ. P.

56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by:  (A) citing to particular parts of materials in the record, including depositions

. . . . ").  Wyatt is testifying about the source which informs his firsthand knowledge about the

asbestos-containing components.  Whether or not such testimony constitutes hearsay is best

determined by the trial judge at the appropriate time.

Plaintiff argues that Sikorsky incorporated asbestos-containing components into its SH-3

helicopters and therefore, it had a duty to warn Decedent about the dangers of asbestos and that

Sikorsky breached that duty.  *See Air & Liquid Systems Corp. v. DeVries*, 586 U.S. 446 (2019).

Sikorsky argues that "(1) there is no evidence that any such part was original to the aircraft or

supplied as a replacement part, (2) there is no evidence that Sikorsky directed or specified that an

asbestos-containing replacement part be incorporated into any such part, (3) there is no evidence

that Sikorsky knew, or had control over, the material composition of any replacement

components that the Navy may install in SH-3 aircraft after delivery to the Navy, and (4) there is

no evidence that any such part would be unable to function without an asbestos-containing

replacement part."  (D.I. 131 at 9)

The court recommends that a genuine issue of material fact exists regarding Sikorsky's duty to warn. There is enough evidence in the record that Sikorsky did not supply a "bare metal" aircraft, that its SH-3 helicopters were equipped with asbestos-containing component parts, that Sikorsky knew that such parts would have to be replaced, and its aircraft would not function without the parts. Specifically, Wyatt testified that he ordered asbestos-containing clamps and gaskets to incorporate as replacement parts into the SH-3s on which he and Decedent worked. (*See* D.I. 149-4 Ex. P-1 at 51:21–52:15; 86:2–13) He ordered asbestos-containing products to withstand the heat created by the aircraft. (*See id.* at 85:14–25) Moreover, Sikorsky employee Karl Ulsamer's declaration for *Bagley* states that Sikorsky was aware of certain asbestos-containing parts that were incorporated into its helicopters, including gaskets, adhesives, and cloths. (D.I. 149-4 Ex. P-8 at ¶¶ 5–6) Ulsamer reiterated this in his testimony for the instant case. (*See* D.I. 149-4 Ex. P-9 at 92:21–96:9) Vincent Recine testified that certain components, *e.g.*, clamps, gaskets, and sleeves, were standard products in Sikorsky helicopters. (*See* D.I. 149-4 Ex. P-10 at 83:18–84:16) The evidence creates a genuine dispute of material fact regarding whether the SH-3 helicopter was originally manufactured with asbestos-containing parts or if it required the incorporation of an asbestos-containing part to function as intended.

Finally, Sikorsky has failed to carry its burden of citing to specific facts in the record that warrant granting judgment in its favor as a matter of law. Sikorsky directs the court to its concise statement of facts, which in turn cites to entire exhibits totaling hundreds of pages without directing the court to specific support in the record. (*See* D.I. 131 at 9–10; D.I. 131-1 ¶¶ 13, 15–19; *see also* discussion, *supra*, § III.A.)

Therefore, a genuine dispute of material fact exists as to whether Sikorsky's breached its duty to warn about the dangers of asbestos pursuant to *DeVries*. Accordingly, the court recommends that Sikorsky's motion for summary judgment as to Counts I and II be **DENIED**.

### D. Sikorsky's Government Contractor Defense

Sikorsky argues that the government contractor defense warrants dismissal of Plaintiff's claims because the military was extensively involved in monitoring and approving the design and manufacturing of the Sikorsky SH-3 helicopter. (D.I. 131 at 12–17) Specifically, Sikorsky cites the declaration of Vincent Recine, who testified that "Sikorsky could not take any action in the design and manufacture of SH-3 aircraft that went beyond the Government-delegated authority." (D.I. 131-6 at ¶ 21) Moreover, the military, rather than Sikorsky, controlled the warnings, markings, and insignia that were placed on the aircrafts themselves and their accompanying service and maintenance manuals. (*Id.* at ¶¶ 22–24) Sikorsky also cites the declaration of Stephen Riordan, a former Navy Pilot and Aircraft Maintenance Officer who currently works as a consultant, who echoes Recine's testimony regarding the military's control over the design, manufacture, and warning placement on the SH-3. (*E.g.*, D.I. 134 at ¶¶ 2–4, 20–22) Lastly, Sikorsky cites to the declaration of Samuel Forman, MD, a former naval doctor who testified that the military had "state-of-the-art" knowledge regarding the hazards of asbestos exposure and did not solicit safety-related advice from product manufacturers. (*E.g.*, D.I. 131-3 at ¶ 148)

Plaintiff argues that manufacturers were nevertheless allowed to warn end users about the dangers of asbestos. (D.I. 149 at 16–17) In support, Plaintiff cites SEANAV Instruction 6260.005, a naval document that purports to encourage manufacturers to place warnings on their end products. (*See id.*; *see also* D.I. 149-4 Ex. P-13) Plaintiff also argues that Defendants'

evidence does not show that Sikorsky attempted to warn its products' end-users about the dangers of asbestos or that the military told Sikorsky that it could not warn end-users of the dangers of asbestos. (D.I. 149 at 17)

Genuine issues of material fact remain. Although Sikorsky argues that SEANAV Instruction 6260.005's discussion of "hazardous chemicals" does not include asbestos, the court must construe all disputed facts in favor of the plaintiff. *See Various Plaintiffs v. Various Defendants*, 856 F. Supp. 2d 703, 712–13 (E.D. Pa. 2012) (finding that a genuine dispute of material fact existed regarding the government contractor defense due to SEANAV Instruction 6260.005).

"[A]t the summary judgment stage, a defendant asserting the government contractor defense has the burden of showing the absence of a genuine dispute as to any material fact regarding whether it is entitled to the government contractor defense." *Id.* at 709 "Ordinarily, because of the standard applied at the summary judgment stage, defendants are not entitled to summary judgment pursuant to the government contractor defense." *Id.* at 710.

Accordingly the court recommends **DENYING** Sikorsky's motion for summary judgment.

### E. Derivative Sovereign Immunity

Sikorsky argues that the derivative sovereign immunity defense shields it from liability because there is no allegation that it ever exceeded the authority delegated to it by the government and that the authority was validly conferred. (D.I. 131 at 11–13) Plaintiff argues that the record is devoid of allegations that Sikorsky could not have warned about the dangers of asbestos while also complying with its delegated authority. (D.I. 149 at 17–18) Plaintiff cites *Spurlin v. Air & Liquid Systems Corp.*, 568 F. Supp. 3d 1050 (S.D. Cal. 2021), in support of her

21

argument. (D.I. 149 at 18)  There, the court held that derivative sovereign immunity was inapplicable because there was no explicit government instruction prohibiting the defendants from warning about the hazards of asbestos. *Spurlin*, 568 F. Supp. 3d at 1054–56.  The court further noted that "[a]ffording Defendants immunity under these circumstances would therefore seem to unfairly reward Defendants for their lack of due diligence in identifying and including warnings that the Navy relied on them to provide." *Id.* at 1056

Here, based on the evidence cited by Sikorsky, as well as SEANAV Instruction 6260.005, discussed in the previous Section, a genuine dispute of material fact exists regarding whether Sikorsky was prohibited from warning about the dangers of asbestos. *See Vangjeli v. Banks*, 2020 WL 5880131, at *5 (E.D. Pa. Oct. 2, 2020) (noting that "discretion is . . . fatal to a claim for derivative sovereign immunity.").  Moreover, Sikorsky's citation to *Gay v. A.O. Smith Corp.*, 2022 WL 2829887 (W.D. Pa. Apr. 21, 2022), is distinguishable because there was no dispute regarding whether the defendant failed to undertake acts within its discretion. *Id.* at *2.

Accordingly, the court recommends **DENYING** Sikorsky's motion for summary judgment.

### F. Conspiracy

Defendants argue that "there is no federal law governing civil conspiracy in admiralty cases" and that Plaintiff has not established facts showing that Defendants engaged in a conspiracy to cover up the harms of asbestos used in its products.  (D.I. 129 at 7–8 (quoting *Alonso v. McAllister Towing of Charleston, Inc.*, 595 F. Supp. 2d 645, 651 (D.S.C. 2009))  Plaintiff argues that she has made a *prima facie* case for conspiracy and punitive damages that is valid under California law.  (D.I. 150 at 11)  She does not cite to the record or explain her reasoning. (*See id.*)  Rather, Plaintiff notes that punitive damages are available in some maritime

law cases.  (*Id.* (citing *Sanchez v. Various Defendants*, 2014 WL 3353044 (E.D. Pa. July 9, 2014))  Plaintiff's arguments are conclusory, and Plaintiff has failed to establish that any material issue of fact exists as to the conspiracy claim.  Accordingly, the court recommends that Defendants' motion for summary judgment be **GRANTED** as to Count III of the Corrected Third Amended Complaint.

### G. *DAUBERT* MOTIONS

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert*.  Under those authorities, the trial court is assigned the task of ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand.  *Daubert*, 509 U.S. at 597.  In particular, the court must determine whether the reasoning or methodology underlying the expert's testimony is scientifically valid and whether the reasoning or methodology can properly be applied to the facts of the particular case.  *Id.* at 593.  The *Daubert* framework applies broadly to "scientific, technical, or other specialized knowledge," and the rules of evidence require a trial judge to determine whether that testimony "has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert*, 509 U.S. at 592).

Defendants argue that all three expert witnesses' opinions should be deemed inadmissible.  Plaintiff's experts are mechanical engineer Dr. Peter Tkacik, occupational health expert Dr. Arthur Frank, and pulmonologist Dr. Jonathan Gelfand.

#### 1. Dr. Tkacik

Defendants argue that Dr. Tkacik's expert opinions regarding Decedent's inhalation of respirable asbestos fibers from nine specific aircraft components should be excluded because he never worked on any aircraft, and he admitted he is "not an asbestos expert." (D.I. 129 at 14–15)

23

He has no experience in industrial hygiene, occupational health, or material science as it relates to asbestos. (*Id.* at 15)  Dr. Tkacik never reviewed any drawings or specifications for the nine component parts that are the subject of his opinions. (*Id.*)

"Qualification requires that the witness possess specialized expertise." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (quotation marks omitted). The Third Circuit "has had, for some time, a generally liberal standard of qualifying experts." *Elcock v. Kmart Corp.*, 233 F.3d 734, 742 (3d Cir. 2000). "This liberal policy of admissibility extends to the substantive as well as the formal qualifications of experts." *Pineda*, 520 F.3d at 244.

"To prove reliability, the party must show that the expert's testimony is based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief. The expert's testimony must also be relevant for the purposes of the case and must assist the trier of fact." *Crawford v. George & Lynch, Inc.*, 2013 WL 6504361, at *2 (D. Del. Dec. 9, 2013) (quotation marks and citations omitted).

The court recommends granting Defendants' motion to disqualify Dr. Tkacik as an expert. Although he has Bachelors, Masters, and Doctorate degrees in mechanical engineering and is a certified automotive repair technician, (D.I. 149-4 Ex. P-6 at 49), his experience relates to research, maintenance, and repair of gas turbine engines. (*See, e.g., id.* at 49–53)  Plaintiff has failed to provide any substantive response in her answering brief and provides only conclusory argument that the witness is qualified by his background in maintenance and machinery to testify about Decedent's alleged exposure arising from his work on SH-3 helicopters. (D.I. 150 a 17–18)  Moreover, his opinions lack reliability because he has not reviewed materials, such as   .

drawings or specifications for the alleged asbestos-containing component parts of the helicopter, which is the subject of his testimony. (*See* D.I. 129-3 Ex. 3 at 100:11–19)

Therefore, the court recommends **GRANTING** Defendants' motion excluding Dr. Tkacik from offering his opinions at trial.

### 2. Drs. Frank and Gelfand's Opinions Regarding Specific Causation

Defendants argue that the opinions of Drs. Frank and Gelfand should be excluded because they rely on a "Case Summary" of unknown origin. (D.I. 129 at 18)  They argue that the case summary lacks reliability and cannot serve as a proper foundation for their expert opinions. (*Id.*)  Furthermore, neither expert cites to any peer-reviewed scientific articles involving aircrafts. (*Id.* at 19)

Furthermore, Defendants argue that their testimony will be of no assistance to the factfinder because neither one will offer any opinions as to quantitative levels of alleged asbestos exposure or whether exposure to a particular Defendants' product was a substantial contributing factor in causing Decedent's illness. (*Id.*)

Plaintiff contends that Dr. Frank has been qualified to testify as an expert on this topic in numerous other cases, (D.I. 150 at 11–12 (listing cases where he has testified, including *Rost v. Ford Motor Co.*, 151 A.3d 1032 (Pa. 2016), and *Waite v. All Acquisition Corp.*, 194 F. Supp. 3d 1298 (S.D. Fla. 2016))), and that both experts adequately explained the basis of their opinions. (D.I. 150 at 12)

The reliability of the "Case Summary" relied upon by both experts can be addressed through cross-examination at trial and is not a basis for disqualifying the experts. (*See* D.I. 129-3 at 196)  Moreover, the experts support their opinions on material other than the "Case Summary[.]"  Dr. Frank also considered "a client data sheet; . . . a death certificate; and

25

pathology records from Christiana Hospital[,]" as well as deposition testimony.  (D.I. 149-4 Ex. P-4 at 1)  And Dr. Gelfand considered approximately 900 pages of documents, including medical records from three different hospitals, the client data sheet, and Charles Wyatt's deposition testimony.  (D.I. 149-4 Ex. P-5 at 1)

Dr. Frank is a board-certified physician in the field of Internal and Occupational Medicine and an expert on disease caused by asbestos.  (D.I. 150 at 11; *see also* D.I. 150-4 Ex. P-9 (Dr. Frank's CV))  Dr. Gelfand is a practicing pulmonologist who has been giving expert testimony since the 1990s.  (D.I. 150-4 Ex. P-11 at 23:8–24:10, 39:2–5)

Defendants argue that the experts' opinions should nevertheless be excluded because "their testimony does not discuss Defendants' role in causing any injury to Decedent."  (D.I. 129 at 19)  But the experts will be able to assist the jury in explaining how exposure to asbestos from the helicopter components in issue was a significant contributing cause to Decedent's lung cancer.

### 3.  Dr. Frank's Medical Opinion

Next, Defendants argue that Dr. Frank's medical opinion should be deemed unreliable under *Daubert* because he reviewed only six curated pages of Decedent's 7,000+ pages of medical records.  (D.I. 129 at 19–20)  They argue that he is completely unaware of Decedent's medical history and that his testimony cannot help the trier of fact.  (*Id.*)  Plaintiff's responds that there is no requirement that an expert review all of one's medical records to prepare a report, and Decedent's lung cancer diagnosis was not in dispute.  (D.I. 150 at 15)  She also points out that Dr. Frank believed that Decedent's other medical records were not relevant to asbestos-related diseases.  (*See id.*; *see also* D.I. 150-4 Ex. P-10 at 37:9–24)

26

The court does not find Defendants' argument persuasive because it would be impractical to impose Defendants' *per se* rule, for which they do not cite any authority.  Furthermore, challenges to the thoroughness of the record reviewed by the expert go to the weight and not the admissibility of the expert's opinion.

### 4. Dr. Gelfand's Life Expectancy Opinion

Lastly, Defendants challenge the following excerpt from the Gelfand Report:

> In my opinion, [Decedent's] other medical problems, including hyperlipidemia, hypertension, coronary artery disease, Ischemic cardiomyopathy, chronic systolic heart failure, left bundle branch block, and ventricular tachycardia with an implanted defibrillator, were not related to asbestos.  *In my opinion, with heart disease under control,* [Decedent's] *prognosis for survival was much better from heart disease than the prognosis for survival from lung cancer, at the time of his cancer diagnosis.* All opinions have been stated to a reasonable degree of medical certainty.

(D.I. 149-4 Ex. P-5 at 2–3 (emphasis added))  Defendants claim that this statement is *ipse dixit* because it is not supported by actuarial tables or outside sources, so it should be excluded.  (D.I. 129 at 20)  But Dr. Gelfand testified that this statement is based upon his experience as a practicing pulmonologist.  (D.I. 150 at 16; *see also* D.I. 129-3 Ex. 7 at 39:2–5)

According, the court recommends **DENYING** Defendants' *Daubert* motion to exclude the testimony of Dr. Frank and Dr. Gelfand.

## III.   CONCLUSION

For the foregoing reasons, the court recommends that Hexcel's motion for summary judgment be **GRANTED**, Sikorsky's motion for summary judgment be **GRANTED-IN-PART** for Plaintiff's conspiracy claim only and **DENIED** in all other respects, and Defendants' *Daubert* motion be **GRANTED-IN-PART** as to Dr. Tkacik and otherwise **DENIED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(l)(B), Fed. R. Civ. P. 72(b)(l), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objections and responses to the objections are limited to ten (10) pages each.  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated:  August 2, 2024

Sherry R. Fallon
United States Magistrate Judge

28