IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LISA MCINNIS, Administratrix of the Estate of MALCOLM A. MCINNIS, deceased, and widow in her own right,<br><br>Plaintiff,<br><br>v.<br><br>HEXCEL CORPORATION, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 22-1087 (MN) (SRF)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Thomas C. Crumplar, JACOBS & CRUMPLAR, Wilmington, DE – Attorneys for Plaintiff

Nicholas E. Skiles, SWARTZ CAMPBELL LLC, Wilmington, DE – Attorneys for Defendant Sikorsky Aircraft Corporation

September 30, 2024
Wilmington, Delaware


**NOREIKA, U.S. DISTRICT JUDGE:**

On August 2, 2024, Magistrate Judge Fallon issued a Report and Recommendation ("the Report") (D.I. 157) recommending, *inter alia*, that the Court deny Defendant Sikorsky Aircraft Corporation's Motion for Summary Judgment ("the Motion") as to Counts I and II of the Corrected Third Amended Complaint (D.I. 105) and grant the Motion as to Count III. Presently before the Court are the objections of Defendant Sikorsky Aircraft Corporation ("Sikorsky") (D.I. 160) to the Report.[1] The Court has reviewed the Report (D.I. 157), Sikorsky's objections (D.I. 160), and Plaintiff's response thereto (D.I. 163). The Court has also considered *de novo* the objected-to portions of the Report and the relevant portions of Sikorsky's Motion (D.I. 130, 131, 132, 134–142, 153) and Plaintiff's response thereto (D.I. 149). For the reasons set forth below, Sikorsky's objections are OVERRULED, the Report is ADOPTED, and Sikorsky's Motion for summary judgment is GRANTED-IN-PART and DENIED-IN-PART.

**I.     BACKGROUND**

No party has objected to the Report's clear recitation of the facts, and the Court adopts that recitation here:

> A.     Procedural History
>
> Plaintiff brought this suit against numerous defendants in the Pennsylvania Court of Common Pleas of Philadelphia County on June 21, 2022. *See McInnis v. ADC Contracting & Supply*, Case No. 2206-1853 (Phila. Ct. Com. Pl. filed June 21, 2022). (D.I. 1 at 5, 29). It was removed to the Eastern District of Pennsylvania on July 18, 2022. *See McInnis v. ADC Contracting & Supply*, CA No.

---

[1] Plaintiff did not file any objections to the Report and Sikorsky did not object to the Report's recommendation that its motion be granted with respect to Count III. The Court, having found no clear error on the face of the record with respect to Court III, therefore adopts the Report's recommendation. Judgment will be entered in favor of Sikorsky and against Plaintiff as to Count III of the Corrected Third Amended Complaint.

5:22-cv-02779-ER (E.D. Pa. filed July 18, 2022).[2] On August 16, 2022, the claims against three defendants, Raytheon Technologies Corporation (hereinafter "Raytheon"), Hexcel Corporation, and Sikorsky, were transferred to the District of Delaware because Pennsylvania lacked personal jurisdiction over them. (D.I. 56). On August 24, 2022, this case was referred to [Judge Fallon].
On September 7, 2022, Raytheon moved to dismiss for lack of personal jurisdiction. (D.I. 67). This motion was unopposed, so the court recommended Raytheon's dismissal on September 28, 2022. The recommendation was adopted by the District Judge on October 13, 2022. (D.I. 78).

Defendants filed the motions before the court on October 27, 2023. (D.I. 128; D.I. 130). Plaintiff opposes the motions. (D.I. 149; D.I. 150). They were fully briefed on December 21, 2023, and are ripe for review. (D.I. 152; D.I. 153).

B.   Facts

This action arises from the death of Plaintiff Lisa McInnis' husband, Malcolm A. McInnis (hereinafter "Decedent") from alleged asbestos exposure. (*See* D.I. 105). Plaintiff is a citizen of Delaware. (*Id.* at ¶ 1). Both Hexcel and Sikorsky are Delaware corporations that maintain their principal places of business outside of Delaware. (*Id* at ¶ 7). The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1333 and 1442(a)(l). (*Id.* ¶ 82; *see also* D.I. 1 ¶ 7).

The Corrected Third Amended Complaint avers that Decedent served as a naval helicopter mechanic onboard the USS Midway, Enterprise, New Orleans, and Ranger between January of 1972 and February of 1981. (D.I. 105 ¶¶ 6(d)–(e)). Decedent repaired Sikorsky SH-3 helicopters in the open ocean and on naval bases in San Diego, California and Quonset, Rhode Island. (*Id*). The SH-3s allegedly contained component parts made with asbestos, such as cloths, clamps, and gaskets, that Decedent would routinely handle and replace. (*Id.* ¶ 9).

Decedent was diagnosed with lung cancer on October 29, 2021, and died on January 5, 2022. (*Id* ¶¶ 1, 26). Plaintiff contends that Decedent's illness and death was substantially caused by Decedent's exposure to asbestos while working on Sikorsky SH-3 helicopters during his service in the Navy. (*See, e.g., id.* ¶ 27).

---

[2]   This case was closed on July 16, 2024, before summary judgment motions were resolved. (*See* D.I. 361).

On February 21, 2023, Plaintiff filed the operative Corrected Third Amended Complaint, which asserts five counts: Count I - Negligence; Count II - Strict Liability; and Count III - Conspiracy. (D.I. 105). Counts IV and V are more aptly choice of law provisions identifying that the causes of action are subject to maritime law for ship-based claims and California law for land-based claims, respectively. (*Id.* ¶¶ 82-86).

On March 29, 2023, the parties stipulated that only the following helicopter parts are at issue in this case: the battery compartment; battery cable jacket; generator gasket; engine oil sensing unit and gasket; clamps associated with fire detection cable on firewall; clamps associated with transmission wiring; slip rings associated with blade fold system; cable on transmission "Christmas tree"; capacitors; transformer rectifier; cannon plug connectors; and engine bleed air valve. (D.I. 113).

  C.  Testimony of Product Identification Witnesses

Decedent was not deposed in this case prior to his death on January 5, 2022. Therefore, Plaintiff relies largely on the product identification witnesses to support the claim that Decedent was exposed to asbestos during his time in the Navy. Plaintiff identified three of his fellow naval servicemen as product identification witnesses for deposition: Charles Wyatt, Richard Sprankle, and Frank Edwards. In addition, Plaintiff relies upon testimony provided by Sikorsky employees Karl Ulsamer and Vincent Recine.

    1.  Charles Wyatt

Wyatt and Decedent worked together on SH-3 helicopters over a two-year period while assigned to the USS Enterprise. (D.I. 131–2 Ex. 5 at 170:9–15). Wyatt testified that he and Decedent were exposed to a large number of asbestos products associated with the helicopters. Wyatt often ordered the parts used for the aircrafts' maintenance and recalls seeing references to "asbestos" in the parts manuals for some products. (*E.g.,* D.I. 149–4 Ex. P–1 at 51:21–52:15).

The batteries in the helicopters required general maintenance. (*See id*. at 41:7–11). They were in a compartment insulated with cloth that created dust when they were handled or deteriorated. (*See id.* at 44:19–46:17). Wyatt and Decedent were present when the metalsmiths handled the cloth. (*Id* at 43:22-46:17).

3

The clamps used in the electrical system in the engine deteriorated in the heat and created dust. (*Id* at 49:4–50:20). Wyatt claims that Decedent breathed the dust because he was in the vicinity of the clamps "all the time." (*Id* at 49:2–50:20). Wyatt believed the clamps contained asbestos because a parts manual indicated that they contained asbestos. (*Id.* at 51:21–52:15).

According to Wyatt, a gimbal is a ring which spins and helps to maintain altitude in the helicopter. (*Id.* at 57:15–21). He and Decedent would remove and replace the gimbals, which broke and deteriorated often. (*Id.* at 59:7–24). The rings were called slip rings or the "Christmas tree" and were part of the blade fold system. (*Id.* at 61:17–62:24). Each slip ring had an electrical attachment. (*Id.*).

Repairing cracks in the helicopter blades required sanding and re-application of a coating. Wyatt and Decedent were present during this process. (*E.g., id* at 63:8–65:2). Wyatt referred to the coating as an epoxy. (*Id* at 107:1–5).

Wyatt testified that he and Decedent removed or handled resistors and capacitors in electronic relay panels, but Wyatt did not know their composition. (*Id.* at 66:15–69:9). They also worked on pressure switches used in the engine and transmission. (*Id.* at 70:4–13).

Wyatt testified that he and Decedent handled gaskets and packing, which contained asbestos according to the parts manual. (*Id.* at 86:2–8).

Wyatt further testified that he and Decedent removed and replaced connectors, which had to be pulled from a firewall and involved contact with insulation. (*Id.* at 78:14–79:1, 81:1–7). Wyatt testified that the insulation associated with the connectors contained asbestos because the area required asbestos jacketing for heat resistance. (*Id.* at 84:7–85:10).

Wyatt identified honeycomb products that were used for the helicopter blades. (*Id.* at 98:20–99:4). He and Decedent were in the vicinity of others working with honeycomb products. (*Id.* at 63:7–65:2).

Wyatt further testified that Sikorsky representatives were present on the ship, but neither he nor Decedent had discussions with them about safety issues. (*Id.* at 111:15–112:12).

4

2. Richard Sprankle

Sprankle testified that he and Decedent would have worked on the aircraft separately. (*See, e.g.*, D.l. 149 Ex. P-2 at 37:10–13). Thus, his testimony about the kind of work Decedent might have performed is based on his knowledge of the similarity of their jobs and the job requirements for maintaining the electrical systems on the SH-3 helicopters, not on personal observations of Decedent's work. (*See, e.g.*, *id*. at 49:20–24).

The job required replacement of batteries and removal of the insulated battery cables that were attached. Yet, Sprankle had no knowledge of the materials used to insulate the battery cables. (*Id.* at 34:7–17). Sprankle testified that clamps and gaskets would deteriorate. The clamps would create dust. (*Id.* at 39:15–41:15, 46:10–51:4). The worn gaskets needed to be scraped prior to replacement and created dust in the process. (*Id.* at 39: 15–41: 15, 46: 10–51 :4). Sprankle offered no testimony about the composition of the dust from the gaskets and never saw Decedent handle a gasket. (*Id.* at 48:24–49:23). The job also required replacement of coverings called "sleeves" that covered wire bundles. (*See id.* at 64:13–65:15). But Sprankle had no knowledge of the composition of the cloth sleeves used in high temperature conditions. (*See id.* at 64:13–65:15).

3. Frank Edwards

Edwards worked in the same shop as Decedent. (D.I. 149-4 Ex. P-3 at 18:13–16). He saw Decedent work on the SH-3 engines. (*Id.* at 35:21–37:16). He saw Decedent remove and replace new connectors. (*Id.* at 36:19–38:9). Decedent worked on insulated clamps and cables. (*E.g.*, *id*. at 39:9–41:12). He worked on the aircraft's rotor blades. (*Id.* at 49:17-21). Decedent removed and installed harnesses frequently. (*Id.* at 57:7–58:12). But Edwards did not know the composition of any of the components handled by Decedent. (D.I. 131-2 Ex. 4 at 144:20–145:1).

4. Karl Ulsamer

Karl Ulsamer is a Senior Materials and Process Engineer at Sikorsky whose deposition was taken in an unrelated workers' compensation proceeding in Connecticut in 2012. *See Bagley v. Adel Wiggins Group.*, cv-12-6024725-S (Conn. Super. Ct. filed Jan. 20, 2012) (hereinafter "*Bagley*"). (D.I. 149-4 Ex. P-8). Ulsamer testified that Sikorsky utilized asbestos-containing parts in some of its helicopters during the time period beginning in 1979, including gaskets,

5

adhesives, cloths, and honeycomb. (*Id.* at ¶ 5). His testimony did not specifically mention the SH-3 helicopter. (*See id.* at ¶¶ 5–6).

Ulsamer's testimony was also taken in the instant case. (D.I. 149-4 Ex. P-9). He explained that one of his job duties involved finding replacement helicopter parts that do not contain asbestos. (*Id.* at 63:8–24). He testified that certain products utilized on Sikorsky helicopters contained asbestos, including Garlock gaskets, clamps, and brake linings. (*Id.* at 92:21–96:9). However, Ulsamer testified that he was unsure if the products he identified were ever utilized in an SH-3 or whether the Hexcel products he identified, Blue Seal honeycomb and Hexgard 540 honeycomb, were used on any aircraft. (*Id.* at 130:1–15, 188:14–20, 208:21–209:2).

5.  Vincent Recine

Recine was deposed as a corporate representative of Sikorsky on March 9, 2023. (D.I. 149-4 Ex. P-10). Recine testified that it was standard to have clamps, gaskets, sleeves, seals, and adhesives onboard Sikorsky helicopters. (*Id.* at 83:18–84:16). He was shown a copy of a naval document titled "Replacement of Asbestos Aboard Navy Aircraft" that identifies various asbestos-containing parts used on Sikorsky "H-3" helicopters. (*Id.* at 71:7–75:23; *see also* D.I. 149 at 10; D.I. 149-4 Ex. P-11). Recine stated that the only part he recalled was the battery cable. (D.I. 149-4 Ex. P-10 at 75:8–23).

II. **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). If the moving party has carried its burden, the nonmovant must then "come forward with 'specific facts showing that there is a *genuine issue* for trial.'" *Id.* at 587 (quoting FED. R. CIV. P. 56(e)) (emphasis in original). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). The Court may not grant summary judgment if a "reasonable jury could

6

return a verdict for the nonmoving party." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 459 (3d Cir. 1989).

To defeat a motion for summary judgment, however, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. United States Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). "[The] mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 302 (3d Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

**III.   DISCUSSION**

Sikorsky objects to four of the Report's findings: (1) that Plaintiff's evidence was sufficient to create a genuine dispute of material fact "as to whether asbestos-containing materials utilized on Sikorsky's SH-3 helicopters were a substantial factor in causing Decedent's injuries" (D.I. 157 at 15); (2) that a genuine dispute of material fact exists regarding Sikorsky's duty to warn (*id.* at 19); (3) that genuine issues of material fact exist as to Sikorsky's government contractor defense (*id.* at 21); and (4) that summary judgment should be denied on Sikorsky's derivative sovereign

7

immunity defense "because a genuine dispute of material fact exists regarding whether Sikorsky was prohibited from warning about the dangers of asbestos" (*id.* at 22). The Court addresses each objection below.

### A. Whether a Triable Issue Exists Regarding Asbestos-Containing Materials on Sikorsky's SH-3 Helicopters

The Report determined that a genuine dispute of material fact exists as to whether asbestos-containing materials utilized on Sikorsky's SH-3 helicopters were a substantial factor in causing Decedent's injuries. (D.I. 157 at 17). Sikorsky objects to this finding for two reasons, arguing that: (1) the Report "incorrectly considered testimony regarding SH-3 helicopter parts that the parties stipulated were *not* at issue in this case" (D.I. 160 at 5); and (2) the Report should not have considered Charles Wyatt's purportedly inadmissible hearsay testimony regarding the asbestos content of SH-3 helicopters (*Id.*).

In considering the alleged asbestos-containing materials utilized on Sikorsky's SH-3 helicopters, the Report points to the deposition testimony of Mr. Wyatt, including his discussion of clamps, gaskets, and the insulated jacket on the exterior of the cables. (D.I. 157 at 17). Sikorsky argues that the Report erred in relying on Mr. Wyatt's "generic testimony concerning gaskets *other than* the two specific gaskets [the generator gasket and engine oil sensing unit gasket] at issue. (D.I. 160 at 6). Sikorsky's objection, however, fails to address that additional evidence supports the Report's conclusion. For example, the insulated jacket on the exterior of the cables also mentioned in Mr. Wyatt's testimony is a "Part-At-Issue" – one that Mr. Wyatt testifies he and Decedent were regularly exposed to. (D.I. 157 at 17). Further, Mr. Wyatt's testimony that he had ordered asbestos products "because that's what you knew were the correct heat elements" (*id.*), taken with the other witness testimony in this case, plausibly creates a dispute of material fact for a jury to consider.

8

Sikorsky's main argument, however, appears to be that the Report erred in considering Mr. Wyatt's "asbestos content" testimony as to any component because that testimony is based on inadmissible hearsay. (D.I. 160 at 6). Sikorsky argues first that Mr. Wyatt's testimony regarding the asbestos content of SH-3 gaskets and clamps is based entirely on statements allegedly contained in unidentified "parts manuals," (*id.*) and second, that his testimony regarding the insulating jacket is based on a statement allegedly made by an unknown individual (*id.* at 7), both of which constitute hearsay without exception (*id.*). Although courts typically should decide, when necessary, the question of hearsay at the summary judgment stage, here there is no need. Mr. Wyatt's hearsay testimony is not the sole testimony relied upon in this case. First, the evidence does not show that Mr. Wyatt learned everything about potential asbestos-containing parts from the product manuals. (*See* D.I. 157 at 17 ("Wyatt testified that he ordered asbestos products 'because that's what you knew were the correct heat elements.'")). Second, even without Mr. Wyatt's purported hearsay statements, the record contains evidence sufficient to allow a jury to make a reasonable inference that parts on the SH-3 contained asbestos and caused Decedent's injuries.

Sikorsky employee Karl Ulsamer testified that "Sikorsky was aware of certain asbestos-containing parts that were incorporated into its helicopters, including gaskets, adhesives, and cloths." (D.I. 157 at 19; *see also* D.I. 149–4 Ex. P–9 at 92:21–96:9). Vincent Recine testified that certain components, including those at issue here, such as clamps, gaskets, and sleeves, were standard products in Sikorsky's helicopters. (D.I. 157 at 19; *see also* D.I. 149-4 Ex. P-10 at 83:18-84:16). Mr. Wyatt's two years working with Decedent and knowledge of the types of parts used and ordered for the SH-3, Mr. Ulsamer's testimony that Sikorsky was aware of asbestos-containing parts being used on its helicopters and Mr. Recine's explanation of the products at issue in the

9

present case being standard on Sikorsky's helicopters should be considered together. Viewing the testimony as a whole in the light most favorable to the nonmoving party, as the Court must, the evidence and testimony put forth by Plaintiff appear sufficient for a jury to infer that asbestos-containing parts were utilized on SH-3 helicopters and that Decedent was exposed to them. A genuine dispute of material fact plausibly exists.

### B.     Sikorsky's Duty to Warn

The Report found that a genuine issue of material fact exists regarding Sikorsky's duty to warn. Sikorsky's objection to this recommendation argues that the Report erred in its conclusion "because Plaintiff proffered no evidence that Sikorsky 'required' the use of any asbestos-containing replacement parts." (D.I. 160 at 9).

Under *Air & Liquid Sys. Corp. v. DeVries*, 586 U.S. 446 (2019), a manufacturer has a duty to warn regarding asbestos-containing parts it did not manufacture or supply when "(i) its product *requires* incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses and (iii) the manufacturer has no reason to believe that the product's users will realize that danger." *DeVries*, 586 U.S. at 457 (emphasis added). The "requires" test calls for a plaintiff to show that "(i) a manufacturer directs that the part be incorporated; (ii) a manufacturer itself makes the product with a part that the manufacturer knows will require replacement with a similar part; or (iii) a product would be useless without the part." *Id.* Sikorsky argues that Plaintiff "proffered no evidence that Decedent encountered a SH-3 Part-At-Issue that was original to the aircraft or supplied by Sikorsky as a replacement part" (D.I. 160 at 9), and that the Report erroneously relied on testimony from Mr. Wyatt, Mr. Ulsamer, and Mr. Recine, "none of whom provided any testimony that Sikorsky 'required' the incorporation of asbestos-containing replacement parts in SH-3 helicopters" (*id.*).

10

As discussed above, the testimonies of Mr. Wyatt, Mr. Ulsamer, and Mr. Recine, taken together, plausibly allow for the inference that Decedent was exposed to asbestos while working on an SH-3 from the following statements: (1) Decedent regularly worked with and was exposed to certain types of parts (D.I. 149-4 Ex. P–1 at 85:14–25); (2) certain potentially asbestos-containing parts, including those Decedent worked with, were utilized on Sikorsky helicopters and Sikorsky was aware of this fact (D.I. 149-4 Ex. P–8, ¶¶ 5–6); and (3) these components were standard products in Sikorsky helicopters (D.I. 149-4 Ex. P–10 at 83:18–84:16). Here, the Court agrees with the Report's conclusion that there are genuine issues of material fact as to Sikorsky's duty to warn.

The evidence, taken in the light most favorable to the nonmoving party, lends itself to a dispute regarding whether the SH-3 helicopter included asbestos-containing parts and if those parts were required to function as intended. This is especially true when the testimony that components known to contain asbestos were standard products in SH-3 is considered. Mr. Wyatt's testimony regarding his belief that asbestos products "were the correct heat elements" to order (D.I. 149-4 Ex. P-1 at 85:14-25) may also reasonably imply that Sikorsky "requires" the use of asbestos-containing products for its SH-3 helicopters to work as intended. This dispute is one for a jury to determine. *See, e.g.*, *In re Asbestos Litig.*, 2021 WL 3025842 at *5 (D. Del. July 16, 2021), *report and recommendation adopted*, 2021 WL 3662847 (D. Del. Aug. 18, 2021). This Court adopts the Report's recommendation that Sikorsky's motion for summary judgment as to Counts I and II be denied.

    C.    <u>Sikorsky's Government Contractor Defense</u>

In addressing Sikorsky's government contractor defense, the Report recommended denying the motion for summary judgment because genuine issues of material fact remain. (D.I. 157 at 21). Sikorsky argues that this recommendation was in error because Plaintiff's

evidence "is inapplicable to Plaintiff's claims." (D.I. 160 at 11). Sikorsky claims that "the military was extensively involved in monitoring and approving the design and manufacturing of the Sikorsky SH-3 helicopter." (D.I. 157 at 20). To support this, Sikorsky points to the declarations of Mr. Recine, who testified that Sikorsky could not take action in the SH-3's design and manufacture that exceeded Government-delegated authority (D.I. 131–6); Stephen Riordan, who also testified that the military exerted control over the design, manufacture, and warning placement on the SH-3 (D.I. 134 ¶¶ 2–4, 20–22); and Dr. Samuel Forman, who testified that the military had knowledge of the dangers of asbestos exposure and did not seek safety-related advice from product manufacturers (D.I. 131–3 ¶148).

Plaintiff cites SEANAV Instruction 6260.005, a naval document that Plaintiff contends indicates that the Navy encouraged manufacturers to place warnings on end products. (D.I. 149-4 Ex. P-13). Plaintiff further argues that Defendants have not shown that Sikorsky attempted to provide any warning about the dangers of asbestos or was prohibited from doing so by the military. (*Id.* at 17). Sikorsky's objection rests on its belief that the SEANAV instruction applies only to "containers of hazardous chemicals" and is not intended to govern manufacturer labeling. (D.I. 160 at 11). Sikorsky additionally finds the Report's citation to *Various Plaintiffs v. Various Defendants*, 856 F. Supp. 2d 703, 712–13 (E.D. Pa. 2012), which found a genuine dispute of material fact regarding the government contractor defense due to this SEANAV Instruction, inapplicable because it did not involve a military aircraft manufacturer. (*Id.* at 12).

This Court must construe disputed facts in favor of the Plaintiff. The submitted version of the SEANAV document is illegible, making it impossible for the Court to evaluate the positions of the parties about what it states. Moreover, the *Various Plaintiffs* case is not the only case to find that the SEANAV instruction was sufficient to raise genuine issues of material fact making a

grant of summary judgment improper. *See O'Brien v. Gen. Elec. Co.*, No. 2:09-CV-64018-ER, 2012 WL 7761545 at *1 n.1 (denying Defendant's motion for summary judgment after finding SEANAV Instruction 6260.005 sufficient to raise genuine issues of material fact); *see also Quiroz-Greene v. Thomas Dee Engineering Co.*, No. 11-05133, 2014 WL 345226 at *1 n.1 (E.D. Pa. Jan. 29, 2014). The burden of showing an absence of a genuine dispute of material fact as to the government contractor defense at the summary judgment stage rests with Sikorsky. It failed. This Court agrees with the Report that Sikorsky's motion for summary judgment should be denied.

### D. Sikorsky's Derivative Sovereign Immunity Defense

The Report recommended denying Sikorsky's motion for summary judgment on its derivative sovereign immunity claim, finding a genuine dispute of material fact on the question of whether Sikorsky was "prohibited from warning about the dangers of asbestos." (D.I. 157 at 22). Sikorsky argues that this finding was in error, disputes the applicability of the SEANAV Instruction, and disagrees with the Report's derivative sovereign immunity analysis. (D.I. 160 at 12).

As with its contractor defense claim, the SEANAV Instruction creates a genuine issue of material fact where Plaintiff argues that it allowed – and even required – the use of warning labels and Defendant disagrees. Considering the evidence in the light most favorable to the nonmoving party, this Court adopts the Report's recommendation that an issue of material fact exists, making a grant of summary judgment inappropriate.

### IV. CONCLUSION

For the reasons stated above, Sikorsky's objections are OVERRULED, the Report is ADOPTED, and Sikorsky's Motion for summary judgment is GRANTED-IN-PART and DENIED-IN-PART. An appropriate order will issue.